Glenn E. SNOW BIRD, Plaintiff,

v.

John R. McCLUNG, as North Dakota State Director for the United States Department of Agriculture, Farmers Home Administration, and James R. Keaton, Superintendent of the United States Department of Interior, Bureau of Indian Affairs, Fort Berthold Agency, New Town, North Dakota, Defendants.

Civ. No. 900.

United States District Court,
D. North Dakota,
Southwestern Division.

June 11, 1969.

Thompson, Lundberg & Nodland (Irvin B. Nodland), Bismarck, N. D., for plaintiff.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for defendants.

## MEMORANDUM AND ORDER

REGISTER, Chief Judge.

In July of 1965 the Plaintiff and his wife (now deceased) received an unsecured loan from the United States of America, through the Farmers Home Administration, United States Department of Agriculture, in the sum of $2,500.00. In connection therewith, the Plaintiff and his wife executed a Promissory Note (Form FHA 441-1) and a

document entitled Loan Agreement (Form FHA 441–19). The schedule of payments as set forth in the Promissory Note called for the first payment in the sum of $100 (plus interest) to be due on December 1, 1966, with varying amounts due on each succeeding December 1 through the year 1978, and a final payment to be due on July 1, 1979.

In March 1966, after being charged, tried and convicted of the crime of manslaughter in connection with the death of his wife, Plaintiff was sentenced to a term of eight years in a federal penitentiary. He is presently confined in service of that sentence.

In the spring of 1966 the Farmers Home Administration, acting pursuant to various governmental regulations, requested the Bureau of Indian Affairs that a set-off or transfer to FHA be made of certain funds belonging to Plaintiff and held in trust by the BIA. These monies had accumulated in Plaintiff's Individual Indian Money account from the leasing or permitting of land owned by the United States in trust for the Plaintiff. Thereupon the BIA transferred to FHA the sum of $684.68 from Plaintiff's individual money account; in 1967 the sum of $214.76 was transferred; and in 1968 the sum of $545.74 was transferred, all in partial payment of the indebtedness owed the United States. Through December 1, 1968, according to the schedule of payments heretofore referred to, a total sum of $300.00 plus interest was due the United States from Plaintiff.

Plaintiff brings this action in which he requests an Order "compelling the Defendant James R. Keaton to make a complete accounting for all funds of the Plaintiff Glenn E. Snow Bird commencing with the year 1966 to date; for an Order compelling Defendant McClung as North Dakota State Director for the United States Department of Agriculture, Farmers Home Administration to repay any and all amounts received out of Plaintiff's accounts contrary to law; for an Order restraining Defendants from making any further unlawful dis-

bursements of Plaintiff's funds, and for such other and further relief as the Court may deem equitable and just."

In their answer the Defendants assert, inter alia, that because of Plaintiff's failure to comply with certain requests made by a representative of the Farmers Home Administration in conformity with certain provisions of the Loan Agreement, the loan was declared immediately due and payable under the acceleration clause of the Note, and that the administrative transfer of funds was made pursuant to applicable statutory and regulatory authority.

The pertinent facts, exhibits and other documentary evidence are before the Court by way of stipulation; the issues have been comprehensively briefed, and the matter is now ready for disposition.

Basically, in the Court's view, the determinative issue may be stated thusly: At the time the request for a set-off was made, was the loan in default, as provided by the provisions of the Loan Agreement and the Note itself, and, if so, did the acceleration clause of said Note authorize the action requested and taken?

 The Loan Agreement and Promissory Note were contemporaneously executed by Plaintiff and his wife. The general rule is, of course, that where a note and other contemporaneous written agreement are executed as part of the same transaction, they are to be construed together as forming one contract in a controversy between the original parties. 10 C.J.S. Bills and Notes § 44 b. Therefore, in determining the issue as above stated, the two documents will be considered as one.

Paragraphs 4 and 5 of the Loan Agreement read as follows:

"4. He (Plaintiff) will execute such other instruments and take such other actions as may be required of him from time to time by the FHA to carry out this and other agreements in connection with the loan.

"5. He will *preserve, protect, and properly use* any property acquired

with the loan funds and will not mortgage or otherwise encumber any such property without the written consent of the FHA. If he violates or fails to carry out any agreement contained in this paragraph or any other agreements in connection with the loan, he will convey and deliver ·to FHA any real estate, livestock, machinery, equipment, or other property purchased with the loan funds *or its value* if the FHA requests him to do so." (Emphasis added.)

The pertinent (acceleration) clause contained in the body of the promissory note reads as follows:

"Default hereunder, whether in the payment of any debt evidenced hereby or in the performance of any covenant or agreement herein contained, shall constitute default under any other instrument evidencing a debt from Borrower to the Government or securing or otherwise relating to such a debt, including Borrower's loan application and certification; and default under any such other instrument shall constitute default hereunder. Upon any such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable."

Following his conviction and sentencing, but before he was removed to a federal penitentiary, Mr. Snow Bird was detained in Bismarck, North Dakota. While he was thus in custody, he was visited by an official of the FHA who, presumably being of the opinion that in view of the then circumstances·Mr. Snow Bird was and would be unable to satisfy the conditions of paragraph 5 of the Loan Agreement, requested the Plaintiff to (1) pay his indebtedness in full, or (2) execute a chattel mortgage covering the personal property he purchased with the loan proceeds, or (3) execute an assignment of his trust income. Plaintiff refused each one and all of the three demands. On May 12, 1966 the Superintendent of the Fort Berthold Agency wrote to Mr. Snow Bird (who was then confined in the federal penitentiary at Terre Haute, Indiana) advising Plaintiff that the FHA had requested a set-off or transfer of funds from his individual Indian account; that under applicable governmental regulations his agency was obliged to honor the request; and that unless his agency received a letter from Plaintiff within ten days from date thereof advising that Plaintiff had repaid the loan in full, it would honor the request. Plaintiff made no reply to such letter. As a result, transfers to FHA from Plaintiff's individual Indian money account were made as aforesaid.

By the clear and unambiguous language found in paragraph 5 of the Loan Agreement, Plaintiff agreed to "preserve, protect and properly use" the property he acquired with the loan funds. He further agreed, in paragraph 4 thereof, that he would "execute such other instruments and take such other actions as may be required of him from time to time by the FHA to carry out this and other agreements in connection with the loan." It was reasonable for the FHA to conclude under the circumstances that in view of Plaintiff's prospective lengthy confinement, he could not possibly satisfy or meet his obligations set out in paragraph 5. FHA thereupon sought to protect its interests by calling for performance on the part of Plaintiff under the provisions of paragraph 4. Plaintiff refused to perform as he had agreed to do. FHA proceeded to declare the debt immediately due and payable, under the acceleration clause found in the body of the note.

That clause provides that default "in the performance of any covenant or agreement herein contained * * * shall constitute default hereunder" and that upon "any such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable." In view of the general rule heretofore stated, the word "herein" must be construed to encompass those agreements and covenants

set forth in the Loan Agreement. Therefore, a breach of one or more of those agreements constitutes a default in the note itself, and upon such a default, the holder thereof may, at its option, declare all of the indebtedness immediately due. This option was properly exercised; proper notice and demand was made upon the maker. Failing to succeed in recovering immediate payment, FHA proceeded to utilize the described administrative procedure in collection of its debt.

The two queries contained in the issue as above framed are necessarily answered in the affirmative. The Court reaches this conclusion somewhat reluctantly and only because it is, in its opinion, compelled so to do by virtue of applicable law. Technically, Plaintiff has breached certain provisions of the Loan Agreement and thereby defaulted on his loan, as pointed out above. However, the Court is informed that past and prospective annual increments to Plaintiff's individual Indian money account have been, and most probably would continue to be, more than sufficient to meet the annual payments as set out in the schedule on the note. The officials concerned knew, or should have known, of this fact. Such fund, which was and would be in the custody and control of a Government agency, would have been available to meet the annual payment and could have properly been used for that purpose. It appears to the Court that the action taken was unwarranted and unnecessary, and upon equitable grounds resulted, to a degree, at least, to the detriment of the Plaintiff. Notwithstanding these views the Court is, as stated, compelled to hold in favor of the Defendants.

Now therefore, the Court having considered the pleadings, stipulations, exhibits and briefs, and being fully advised in all the premises, it is

Ordered that Plaintiff's Complaint be, and the same hereby is, in all things, *dismissed*. Counsel for the Defendants will forthwith prepare and submit appropriate form of judgment in conformity herewith. No costs allowed.